STATE OF NORTH CAROLINA v. JOHN DAVIS McNEILL

No. 484A95

(Filed 6 June 1997)

1. **Constitutional Law § 309 (NCI4th)— closing argument— admission defendant guilty of second-degree murder—stipulation by defendant—consent to admission—no denial of effective assistance**

   A defendant on trial for first-degree murder was not denied the effective assistance of counsel by his attorney's admission during closing argument that defendant was guilty of second-degree murder where defendant stipulated in writing that he stabbed the victim and proximately caused her death; the trial court found that defendant knowingly, voluntarily, and understandingly consented to the stipulation; and the stipulation conceded each of the elements of second-degree murder. Where a defendant stipulates to the elements of an offense, defense counsel may infer defendant's consent to admit defendant's guilt of that offense.

   **Am Jur 2d, Constitutional Law § 842; Criminal Law §§ 271 et seq., 309 et seq., 318 et seq.; Trial §§ 190, 191.**

   **Adequacy of defense counsel's representation of criminal client regarding argument. 6 ALR4th 16.**

STATE v. McNEILL

[346 N.C. 233 (1997)]

**2. Criminal Law § 697 (NCI4th Rev.)— acquittal of burglary— not guilty of felony murder—requested instruction given in substance**

The trial court did not err by refusing defendant's written request to instruct the jury that it could not consider the charge of felony murder if it found defendant not guilty of first-degree burglary or guilty of nonfelonious breaking and entering where the court instructed the jury that first-degree burglary was a necessary element of felony murder in this case, and the court thus gave an instruction in substantial conformity with that requested by defendant.

**Am Jur 2d, Criminal Law § 291.**

**3. Criminal Law § 695 (NCI4th Rev.)— request for instruction—necessity for writing**

The trial court did not err by denying defendant's oral request to modify the pattern instruction for premeditation and deliberation. A trial court's ruling denying requested instructions is not error where defendant fails to submit his request for instructions in writing.

**Am Jur 2d, Trial § 715.**

**Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**4. Homicide § 482.1 (NCI4th)— premeditation and deliberation—instruction—list of factors**

The trial court did not err by giving the jury an instruction which contains a list of suggestions which the jury, in its discretion, may consider in determining whether the murder was committed with premeditation and deliberation.

**Am Jur 2d, Homicide § 501.**

**Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**5. Criminal Law § 1367 (NCI4th Rev.)— capital sentencing— aggravating circumstance—murder during burglary—conviction based on premeditation and felony murder**

The trial court did not err by submitting to the jury in a capital sentencing proceeding the (e)(5) aggravating circumstance that the murder was committed during the course of a burglary where the jury convicted defendant of first-degree murder not only on the theory of felony murder based on the underlying felony of first-degree burglary but also on the theory of premeditation and deliberation. N.C.G.S. § 15A-2000(e)(5).

**Am Jur 2d, Criminal Law §§ 609 et seq.**

**6. Criminal Law § 1402 (NCI4th Rev.)— death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not disproportionate to the penalty imposed in similar cases where defendant was convicted on theories of premeditation and deliberation and felony murder; defendant stabbed the victim in her home in front of her children; and the jury found as an aggravating circumstance that the murder was committed during the course of a burglary.

**Am Jur 2d, Criminal Law §§ 606, 607.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Thompson, J., at the 23 October 1995 Criminal Session of Superior Court, Cumberland County, on a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment of life imprisonment for first-degree burglary was allowed 10 July 1996. Heard in the Supreme Court 17 March 1997.

*Michael F. Easley, Attorney General, by John H. Watters, Special Deputy Attorney General, for the State.*

*James R. Parish for defendant-appellant.*

WHICHARD, Justice.

Defendant was indicted on 15 February 1993 for first-degree burglary and for the first-degree murder of Donna Marie Lipscomb. Defendant was tried capitally, and the jury returned a verdict finding him guilty of first-degree murder on the theories of premeditation

and deliberation and felony murder. Defendant was also convicted of first-degree burglary. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death for the first-degree murder. The trial court sentenced defendant accordingly on the murder charge and sentenced him to life imprisonment for the burglary, to run consecutive to the murder sentence. For the reasons set forth herein, we conclude that defendant received a fair trial, free from prejudicial error, and that the sentence of death is not disproportionate.

Evidence presented at trial tended to show that on the night of 17 November 1992, defendant knocked on the door of Melissa Jones' apartment. When Jones opened the door, defendant asked her for the key to the victim's apartment. Jones knew defendant and the victim were dating, and she had frequently seen defendant at the apartment. She therefore gave him the key. She then noticed that defendant had a knife in his hand. After defendant left her apartment, Jones attempted to call the police, but her telephone line had been cut.

After obtaining the key from Jones, defendant walked to the victim's apartment, unlocked the door, and pushed the door open despite the victim's efforts to hold it closed. The victim's two sons, Nat, thirteen, and John, eleven, also lived in the apartment and were present when defendant charged through the door, knife in hand. Nat tried to call the police, but the phone was not working. Defendant stabbed the victim in the chest, back, arms, abdomen, and breast before Nat was able to grab defendant and restrain him from wounding the victim further.

Detective Alex Thompson received a call indicating that there had been a stabbing at the victim's apartment. When he arrived at the apartment, defendant ran to the patrol car. Defendant was covered in blood and appeared intoxicated. He told Thompson that he was the one who had called the police and who had stabbed the victim. Defendant led Thompson to the body and repeatedly asked to be put in handcuffs. He told Thompson that he "didn't mean to do it" but that he stabbed the victim because she was "dissing" him.

At trial, defendant testified that he went to the victim's apartment to attempt to work out their failing relationship. He took a knife because he believed a man was in the apartment, and he was hoping to scare off the man so he could talk to the victim alone. Defendant admitted that he went to the junction box and pulled out all of the telephone wires so he and the victim could talk uninterrupted. When

defendant got inside the apartment, he and the victim began arguing and shoving one another. Defendant then stabbed her. Defendant testified that he did not intend to kill the victim.

[1] Defendant first contends that his federal constitutional right to effective assistance of counsel was violated by his attorney's admission to the jury during closing argument that defendant was guilty of second-degree murder. Prior to trial, defendant introduced to the trial court a written stipulation wherein he admitted that he "did inflict multiple stab wounds" on the victim and that "[t]hese wounds caused her death." Subsequently, during closing remarks, defense counsel argued that "[t]his is not a case of first degree murder; it's a case of second degree murder," and that counsel "[has] the permission of [defendant] to tell you that he's guilty of second degree murder." Defendant now contends that he did not so consent and that the stipulation was not intended to be a concession to second-degree murder. He argues that pursuant to *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986), ineffective assistance of counsel is established *per se* because defense counsel admitted defendant's guilt to the jury without defendant's consent.

In *Harbison*, the defendant shot at the victims, seriously injuring one and fatally wounding the other. Throughout his trial, the defendant steadfastly maintained that he acted in self-defense. The defendant's court-appointed attorney adhered to this defense throughout the presentation of evidence. However, during closing remarks, defense counsel argued: "I don't feel that [the defendant] should be found innocent. I think he should do some time to think about what he has done. I think you should find him guilty of manslaughter and not first degree." *Id.* at 178, 337 S.E.2d at 506. This Court held that the decision to plead guilty lies solely in the hands of the defendant; when counsel admits his client's guilt without first obtaining the client's consent, the client's constitutional rights to a fair trial and to hold the State to the burden of proof beyond a reasonable doubt are surrendered, and a new trial is required. *Id.* at 180, 337 S.E.2d at 507.

*Harbison* is distinguishable. Significantly, there the defendant claimed self-defense. By contrast, defendant here stipulated in writing to having stabbed the victim and proximately caused her death. Second-degree murder is the unlawful killing of another human being with malice but without premeditation and deliberation. *State v. Watson*, 338 N.C. 168, 176, 449 S.E.2d 694, 699 (1994), *cert. denied*,

—— U.S. ——, 131 L. Ed. 2d 569 (1995). The intent necessary to support a conviction for second-degree murder is the intent to inflict the wound which produces the homicide. *State v. Wilkerson*, 295 N.C. 559, 579, 247 S.E.2d 905, 916 (1978). Indeed, malice is presumed where the defendant intentionally assaults another with a deadly weapon, thereby causing the other's death. *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). The stipulation defendant entered concedes each of these elements and therefore supports a verdict of second-degree murder. In arguing in accord with defendant's stipulation, defense counsel cannot be said to have rendered ineffective legal assistance.

In *State v. House*, 340 N.C. 187, 197, 456 S.E.2d 292, 297 (1995), we cautioned the trial bench to establish a clear record of a defendant's consent when a *Harbison* issue arises at trial. The trial court here adhered to that advice by asking whether defendant signed the stipulation, understood its effect, and realized that the information contained therein could be presented to the jury. Defendant responded "yes" to each of these inquiries. Thereafter, the trial court found that defendant knowingly, voluntarily, and understandingly consented to the stipulation, and nothing in the record indicates otherwise. Where, as here, a defendant stipulates to the elements of an offense, defense counsel may infer consent to admit defendant's guilt of that offense. Accordingly, this assignment of error is overruled.

[2] Defendant next contends that the trial court erred in refusing his written request for specific jury instructions. During the charge conference, defense counsel submitted a written request for an instruction informing the jurors that if they found defendant not guilty of first-degree burglary or guilty of nonfelonious breaking and entering, they could not consider the charge of first-degree murder under the felony murder rule. Defendant asked that the instruction be given subsequent to the first-degree burglary instruction and preceding the instruction on nonfelonious breaking and entering. The trial court denied defendant's request. Defendant argues that the requested instruction was a proper statement of law, was supported by the evidence, and therefore should have been given to the jury. We find no error in the trial court's ruling or in the instructions given.

Rather than grant defendant's request, the trial court instructed as follows:

So, I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant broke

and entered an occupied dwelling house without the tenant's consent during the night-time and at that time intended to commit murder, and that while committing burglary, the defendant killed the victim and that the defendant's act was a proximate cause of the victim's death, it would be your duty to return a verdict of guilty of first degree murder under the felony murder rule.

However, if you do not so find or have a reasonable doubt as to one or more of these things, you will not return a verdict of guilty of first degree murder under the felony murder rule.

The trial court gave this instruction as part of the jury charge on first-degree murder under the felony murder rule.

"[T]his Court has consistently held that a trial court is not required to repeat verbatim a requested, specific instruction that is correct and supported by the evidence, but that it is sufficient if the court gives the instruction in substantial conformity with the request." *State v. Brown*, 335 N.C. 477, 490, 439 S.E.2d 589, 597 (1994). Here, the instruction given clearly sets forth that first-degree burglary is a necessary element of felony murder in this case. To find defendant guilty of felony murder, the State had to prove each element of first-degree burglary beyond a reasonable doubt. If the jury had a reasonable doubt as to any of the elements, it was to find defendant not guilty of felony murder. This is, in substance, the concept defendant wished to convey to the jury. The trial court therefore gave instructions in substantial conformity with those requested, and this assignment of error is without merit.

[3] In a related assignment, defendant argues that the trial court erred in denying his oral request to modify the pattern instruction for premeditation and deliberation. During the charge conference, defense counsel requested that the trial court delete all of the listed examples of things from which premeditation and deliberation may be inferred. *See, e.g.*, N.C.P.I.—Crim. 206.10, at 7 (1995). The next day, counsel suggested instead that the following language be added to the pattern instruction: "You may consider the foregoing examples in making your determination on these issues; however, you are not limited to these examples, and it is your duty to consider all of the relevant evidence that has been presented to you on those issues." Co-counsel excepted to this modification and offered alternative language as follows: "[T]his may infer premeditation and deliberation or it may be used to infer a lack of premeditation and deliberation. And these are some of the factors you may consider. That there may

be other factors that you find." The trial court denied both of these proposed instructions. Defendant now contends that the requested instructions were proper under the facts of this case and that the trial court committed prejudicial error by failing to so instruct.

We note initially that defendant's proposed instructions were tantamount to a request for special instructions. Section 15A-1231 provides for conferences on jury instructions and states that "any party may tender written instructions." N.C.G.S. § 15A-1231(a) (1988). Rule 21 of the General Rules of Practice for the Superior and District Courts also pertains to jury instruction conferences and directs, "If special instructions are desired, they should be submitted in writing to the trial judge at or before the jury instruction conference." This Court has held that a trial court's ruling denying requested instructions is not error where the defendant fails to submit his request for instructions in writing. *State v. Martin*, 322 N.C. 229, 237, 367 S.E.2d 618, 623 (1988). Defendant here did not submit either of his proposed modifications in writing, and therefore it was not error for the trial court to fail to charge as requested.

[4] Further, the trial court gave an instruction virtually identical to the pattern instruction on premeditation and deliberation, N.C.P.I.—Crim. 206.10. We recently approved a similar instruction in *State v. Truesdale*, 340 N.C. 229, 235, 456 S.E.2d 299, 301 (1995). We have stated that "[t]he elements listed [there] are merely examples of circumstances which, if found, the jury could use to infer premeditation and deliberation. It is not required that each of the listed elements be proven beyond a reasonable doubt before the jury may infer premeditation and deliberation." *State v. Cummings*, 326 N.C. 298, 315, 389 S.E.2d 66, 76 (1990). More importantly, the instruction "does not indicate to the jury that the trial court is of the opinion that evidence exists which would support each or any of the circumstances listed." *State v. Leach*, 340 N.C. 236, 242, 456 S.E.2d 785, 789 (1995). Reason dictates the conclusion that the jury need not infer premeditation and deliberation from the mere giving of the instruction and that the absence of any or all of the circumstances may indicate a lack of premeditation and deliberation. The instruction is simply a list of suggestions which the jury, in its discretion, may or may not consider in determining whether the murder was committed with premeditation and deliberation. This is precisely as the trial court instructed, and we find no error in that instruction. This assignment of error is overruled.

STATE v. McNEILL

[346 N.C. 233 (1997)]

**[5]** Defendant next contends that it was error for the trial court to submit the aggravating circumstance that the murder was committed during the course of a burglary, N.C.G.S. § 15A-2000(e)(5). The jury convicted defendant of first-degree murder on the theories of premeditation and deliberation and felony murder, with first-degree burglary serving as the underlying felony for the felony murder conviction. Defendant argues that submission of the (e)(5) aggravating circumstance during the capital sentencing phase resulted in improper duplication of that circumstance.

As defendant concedes, the felony underlying a conviction for felony murder may be submitted as an aggravating circumstance pursuant to N.C.G.S. § 15A-2000(e) if the defendant is also convicted of first-degree murder on the basis of premeditation and deliberation. *State v. Goodman*, 298 N.C. 1, 24, 257 S.E.2d 569, 584 (1979). "The commission of the 'underlying' felony is not an essential element of the crime of premeditated murder, and, thus, is not the 'automatic' aggravating circumstance" we held impermissible in *State v. Cherry*, 298 N.C. 86, 113, 257 S.E.2d 551, 568 (1979), *cert. denied*, 446 U.S. 941, 64 L. Ed. 2d 796 (1980). *State v. Rook*, 304 N.C. 201, 230, 283 S.E.2d 732, 750 (1981), *cert. denied*, 455 U.S. 1038, 72 L. Ed. 2d 155 (1982). Because defendant was found guilty of first-degree murder under both theories, the trial court did not err in submitting the (e)(5) aggravating circumstance. This assignment of error is overruled.

## ADDITIONAL ISSUES

Defendant raises five additional issues which he concedes this Court has decided contrary to his position: (1) Issue Three on the Issues and Recommendation Form unconstitutionally permits the jury to recommend death if it finds that the mitigating circumstances are of equal weight and value to the aggravating circumstances; (2) the trial court erred by using the term "satisfy" in its definition of "preponderance of the evidence"; (3) the trial court improperly permitted the jury to reject nonstatutory mitigating circumstances as having no mitigating value; (4) the trial court erred in instructing on Issues Three and Four that a juror "may" consider the mitigating circumstances that a juror determines to exist by a preponderance of the evidence; and (5) the trial court erred in denying defendant's motion to declare the death penalty unconstitutional.

We have considered defendant's arguments on these issues, and we find no compelling reason to depart from our prior holdings. These assignments of error are overruled.

PROPORTIONALITY REVIEW

Having found no error in defendant's trial or separate sentencing proceeding, we are required to review the record and determine (1) whether the evidence supports the aggravating circumstance found by the jury; (2) whether passion, prejudice, or "any other arbitrary factor" influenced the imposition of the death sentence; and (3) whether the sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2) (Supp. 1996). After reviewing the record, transcripts, and briefs, we conclude that the record fully supports the jury's finding of the aggravating circumstance. Further, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. We therefore turn to our final duty of proportionality review.

[6] One purpose of proportionality review is to "eliminate the possibility that a sentence of death was imposed by the action of an aberrant jury." *State v. Lee,* 335 N.C. 244, 294, 439 S.E.2d 547, 573, *cert. denied,* 513 U.S. 891, 130 L. Ed. 2d 162 (1994). Another is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield,* 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied,* 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). To determine whether the sentence of death is disproportionate, we compare this case to other cases that "are roughly similar with regard to the crime and the defendant." *State v. Lawson,* 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied,* 471 U.S. 1120, 86 L. Ed. 2d 267 (1985).

We have found the death penalty disproportionate in seven cases. *State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines,* 345 N.C. 647, 483 S.E.2d 396 (1997), *and by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983). The instant case is distinguishable from each of these. First, defendant was convicted of first-degree murder by premeditation and deliberation and under the felony murder rule. We have consistently stated that "[t]he finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis,* 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds,* 494 U.S. 1023, 108

L. Ed. 2d 604 (1990). Second, defendant stabbed the victim in her home in front of her children. A murder in the home "shocks the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure." *State v. Brown*, 320 N.C. 179, 231, 358 S.E.2d 1, 34, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). Finally, there are four statutory aggravating circumstances which, standing alone, this Court has held sufficient to sustain a sentence of death; the (e)(5) circumstance, which the jury found here, is among them. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 1083 (1995).

Defendant refers us to several cases in which juries recommended life sentences following a capital sentencing proceeding. We recognize that juries have returned sentences of life imprisonment in cases involving a murder committed in the home of the victim. However, "the fact that in one or more cases factually similar to the one under review a jury or juries have recommended life imprisonment is not determinative, standing alone, on the issue of whether the death penalty is disproportionate in the case under review." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 46, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). We conclude that the present case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate or those in which juries have returned recommendations of life imprisonment.

Based on the nature of this crime, particularly the distinguishing features noted above, we conclude that the sentence of death is not disproportionate. We hold that defendant received a fair trial and capital sentencing proceeding, free from prejudicial error.

NO ERROR.