IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-33

No. COA20-660

Filed 18 January 2022

Wake County, No. 18 CRS 207577

STATE OF NORTH CAROLINA

v.

MARK BRICHIKOV, Defendant.

Appeal by Defendant from judgment entered 11 December 2019 by Judge Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals 11 May 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Marc X. Sneed, for the State.*

*M. Gordon Widenhouse, Jr., for defendant-appellant.*

MURPHY, Judge.

¶ 1 A defendant is entitled to a jury instruction on a lesser included offense when the evidence, viewed in the light most favorable to the defendant, could support a jury verdict on that lesser included offense. When there is a reasonable possibility that the jury would have reached a different result had the trial court given the jury instruction on a lesser included offense, a defendant suffers prejudice and is entitled to a new trial.

¶ 2 Here, the evidence, when viewed in the light most favorable to Defendant,

entitled him to a jury instruction on the lesser included offense of involuntary manslaughter. There was a reasonable possibility that a different result would have been reached had the involuntary manslaughter instruction been given to the jury, and Defendant is entitled to a new trial.

## **BACKGROUND**

¶ 3        Defendant Mark Brichikov appeals his second-degree murder conviction in the death of his wife, Nadia Brichikov. Defendant and Mrs. Brichikov both were regular drug users. Only two days prior to her death, Mrs. Brichikov suffered a drug overdose, which resulted in a significant wound to the back of her head and required medical personnel to use Narcan to reverse the impact of opioids in her system. Mrs. Brichikov subsequently told Defendant about the overdose and the use of Narcan to revive her.

¶ 4        On 21 April 2018, Defendant and Mrs. Brichikov coordinated their meet up at a motel, and expressed their love for one another and desire to be together multiple times. Defendant had just left a drug rehabilitation facility, and Mrs. Brichikov had recently left jail and suffered the overdose the day before. However, Mrs. Brichikov had been sexually active with at least one individual other than Defendant, and she was also presently working as a confidential police informant. Defendant and Mrs. Brichikov met at a motel on the evening of 21 April 2018; during that evening and the early morning hours of 22 April 2018, Defendant and Mrs. Brichikov exited their

motel room multiple times, and Defendant appeared to have purchased drugs from a truck nearby.

¶ 5     In the early morning hours on 22 April 2018, responding law enforcement personnel found Mrs. Brichikov deceased in her motel room, with blunt force trauma to her face, as well as drug paraphernalia and Narcan in the room. Mrs. Brichikov had cocaine and fentanyl in her system at the time of her death. Responding law enforcement viewed motel surveillance video, which showed Defendant exiting the motel room and Mrs. Brichikov lying on the floor of the room. Law enforcement obtained a warrant and arrested Defendant for murder.

¶ 6     Defendant was indicted for first-degree murder in the death of Mrs. Brichikov. At trial, the State presented evidence Defendant assaulted Mrs. Brichikov in the motel room after they entered the motel room together for the final time in the early morning of 22 April 2018. During the assault and until she was located by police, Defendant and Mrs. Brichikov were the only individuals inside the motel room; while multiple individuals walked by Mrs. Brichikov while she was lying on the ground in the motel room, they did not enter the room. The State introduced motel video surveillance, which showed Defendant left the motel room for the final time in the early morning hours of 22 April 2018, and also showed Mrs. Brichikov assaulted, on the floor, and moving when Defendant left.

¶ 7     At trial, the medical examiner called by the State opined that Mrs. Brichikov's

death was a "homicide," due to the presence of blunt force trauma consistent with an assault as at least a partial cause of the death. The medical examiner called by Defendant agreed.

¶ 8 Further, both experts also agreed that Mrs. Brichikov's significant heart condition (due to a narrowing of a coronary artery), as well as fentanyl in her system, contributed to her death, and pointed to all three circumstances–the assault, the heart condition, and the fentanyl–as contributing factors to her death, or comorbidities. The State's expert was not certain whether the removal of any one of these factors would have prevented Mrs. Brichikov's death, while Defendant's expert testified Mrs. Brichikov would not have died of the facial fractures from the assault alone. Defendant's expert also testified that Mrs. Brichikov's movements when Defendant left the room appeared to be consistent with a fentanyl overdose, rather than the assault to her face, and noted Mrs. Brichikov's airways "were unobstructed."[1]

---

[1] We note the experts' disagreement does not negate Defendant's criminal responsibility. *See State v. Bethea*, 167 N.C. App. 215, 222, 605 S.E.2d 173, 179 (2004) (marks and citations omitted) ("To escape responsibility based on an intervening or superseding cause, the defendant must show that the intervening or superseding act was the sole cause of death. An intervening or superseding cause is a cause that so entirely intervenes in or supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury."), *cert. denied*, 362 N.C. 88 (2007); *see also State v. Quesinberry*, 319 N.C. 228, 233, 354 S.E.2d 446, 449 (1987) ("A person is criminally responsible for a homicide if his act caused or directly contributed to the death of the victim."). Here, Defendant could still be criminally responsible for Mrs. Brichikov's death because his assaultive behavior directly contributed to her death.

Defendant did not testify during his case in chief, but he admitted under oath outside the jury's presence during the charge conference that he assaulted Mrs. Brichikov and allowed his attorney to admit the same in closing arguments. After both sides rested, Defendant requested voluntary manslaughter and involuntary manslaughter jury instructions. During the charge conference, Defendant also requested a pattern jury instruction for second-degree murder that included involuntary manslaughter and stated the following:

> [DEFENSE COUNSEL]: . . . . We are also requesting involuntary manslaughter under a different theory. And the theory is that if the jury determines that [Defendant] is not guilty of first-, second- and voluntary, if submitted, on the theory that he did not proximately cause her death, then we would submit that an involuntary manslaughter is appropriate under the theory that, based on the video, he -- and text messages and circumstantial evidence, that he would've had knowledge of her drug use and did not adequately get her any medical assistance, and as a result of no medical assistance, [Mrs. Brichikov] expired.

In addition to that request, the trial court and Defense Counsel had the following exchanges during the charge conference:

> THE COURT: . . . . I believe you mentioned earlier that you're requesting involuntary manslaughter.
>
> [DEFENSE COUNSEL]: Yes, Your Honor.
>
> . . . .
>
> THE COURT: . . . . -- assuming the Court gives involuntary manslaughter, or not, either way, do you intend to argue that [Defendant] is guilty of . . .

> [DEFENSE COUNSEL]: Yes, Judge. If the Court is inclined to give the involuntary instruction, then yes, I would be inclined to argue [Defendant] is guilty. We have had that discussion, Judge.
>
> . . . .
>
> THE COURT: All right. So this one does include at the end of the second-degree, "If you do not find [Defendant] guilty of second-degree murder, you must determine whether [Defendant] is guilty of involuntary manslaughter," and . . . "First that [Defendant] acted in a criminally negligent way" is what you're requesting?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.

¶ 10    The North Carolina pattern jury instruction for "Second Degree Murder Where a Deadly Weapon Is Used, Not Including Self-Defense, Covering All Lesser Included Homicide Offenses" reads, *inter alia*, as follows regarding the lesser included offense of involuntary manslaughter:

> For you to find the defendant guilty of involuntary manslaughter, the State must prove two things beyond a reasonable doubt:
>
> First, that the defendant acted a) [unlawfully] (or) b) [in a criminally negligent way]. a) [The defendant's act was unlawful if (*define crime e.g. defendant recklessly discharged a gun, killing the victim*).] b) [Criminal negligence is more than mere carelessness. The defendant's act was criminally negligent, if, judging by reasonable foresight, it was done with such gross recklessness or carelessness as to amount to a heedless indifference to the safety and rights of others.]
>
> And Second, the defendant's [unlawful] (or) [criminally negligent] act proximately caused the victim's death.

N.C.P.I.–Crim. 206.30A (2019). The involuntary manslaughter pattern jury instruction does not include language specifically discussing a culpable omission. *See id.*

The trial court rejected Defendant's requests for pattern voluntary and involuntary manslaughter instructions. Defendant objected at the charge conference to the trial court's refusal to submit those instructions, and renewed his objection after the trial court instructed the jury. The trial court instructed the jury as to first-degree murder and second-degree murder.

On the element of malice, and the use of Defendant's hands as a deadly weapon, the trial court instructed as follows:

> Malice means not only hatred, ill will or spite, as it is ordinarily understood -- to be sure, that is malice -- but it also means that condition of mind that prompts a person to take the life of another intentionally or to intentionally inflict a wound with a deadly weapon upon another which proximately results in her death, without just cause, excuse or justification.
>
> If the State proves beyond a reasonable doubt that [Defendant] intentionally killed the victim with a deadly weapon or intentionally inflicted a wound upon the victim with a deadly weapon that proximately caused the person's death, you *may infer* first that the killing was unlawful and, second, that it was *done with malice, but you are not compelled to do so.*
>
> . . . .
>
> If the State proves beyond a reasonable doubt that [Defendant] intentionally inflicted a wound upon the

> victim with a deadly weapon that proximately caused the victim's death, you *may infer*, first, that the killing was unlawful and, second, that it was *done with malice, but you are not compelled to do so*.

(Emphases added). The trial court's instructions closely track the pattern jury instructions regarding malice in the "Second Degree Murder Where a Deadly Weapon Is Used, Not Including Self-Defense, Covering All Lesser Included Homicide Offenses" jury instruction. *See* N.C.P.I.–Crim. 206.30A (2019). In its closing argument, specifically regarding malice, the State referred to Mrs. Brichikov's facial wounds from Defendant's assault in arguing "[t]hat's malice. That's ill will. That's hatred. That's anger."

¶ 13 The jury convicted Defendant of second-degree murder. On appeal, Defendant argues the trial court's failure to instruct the jury on involuntary manslaughter was reversible error, as the jury could have found Defendant assaulted Mrs. Brichikov in a culpably negligent manner and failed to render aid in a culpably negligent omission, and accordingly could have convicted him of involuntary manslaughter.

¶ 14 The State argues a presumption of malice arose due to Defendant's use of his hands in his assault of Mrs. Brichikov. Specifically, the State argues it "has *established* malice in the instant case." (Emphasis added). Of note, in its brief, the State does not attempt to distinguish one of the most important cases relied on by Defendant, *State v. Debiase*, 211 N.C. App. 497, 711 S.E.2d 436, *disc. rev. denied*, 365

N.C. 335, 717 S.E.2d 399 (2011).

## ANALYSIS

### A. Preservation

¶ 15    "Where a defendant has properly preserved [a] challenge to jury instructions, an appellate court reviews the trial court's decisions regarding jury instructions de novo." *State v. Richardson*, 270 N.C. App. 149, 152, 838 S.E.2d 470, 473 (2020); *see also State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) ("Assignments of error challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court.").

¶ 16    We examine two preservation issues regarding the involuntary manslaughter instruction. First, we analyze whether Defendant's requests for an involuntary manslaughter instruction, with subsequent argument regarding the theory of culpable omission, were sufficient requests for a pattern jury instruction for involuntary manslaughter. Second, we examine whether Defendant preserved the involuntary manslaughter instruction via objection.

¶ 17    While Defendant requested a pattern jury instruction for involuntary manslaughter, the focus of the request turned to a theory of Defendant's culpable omission to obtain aid for his wife when he knew she was overdosing. A request for a culpable omission instruction would be a deviation from the pattern jury instruction, qualify as a special instruction, and would have needed to be submitted

to the trial court in writing. *See State v. McNeill*, 346 N.C. 233, 240, 485 S.E.2d 284, 288 (1997) (citation omitted) ("We note initially that [the] defendant's proposed instructions [to modify the pattern jury instructions] were tantamount to a request for special instructions. . . . This Court has held that a trial court's ruling denying requested [special] instructions is not error where the defendant fails to submit his request for instructions in writing. [The] [d]efendant here did not submit either of his proposed modifications in writing, and therefore it was not error for the trial court to fail to charge as requested."), *cert. denied*, 522 U.S. 1053, 139 L. Ed. 2d 647 (1998).

¶ 18        However, upon a thorough review of the Record, Defendant requested involuntary manslaughter under multiple theories and was not limited to the culpable omission theory. While Defendant requested a special instruction regarding culpable omission that deviated from the pattern jury instructions, he also requested the pattern jury instruction for involuntary manslaughter by responding affirmatively to the trial court's question regarding whether Defendant was requesting the following instruction: "First that the defendant acted in a criminally negligent way[.]" The trial court's language in that question derives from the pattern jury instruction for involuntary manslaughter, and Defendant orally requested the pattern jury instruction for involuntary manslaughter. *See* N.C.P.I.–Crim. 206.30A (2019) (marks omitted) ("For you to find the defendant guilty of involuntary manslaughter, the State must prove . . . that the defendant acted . . . in a criminally

negligent way.").

¶ 19          Further, Defendant's objections to the trial court's refusal to give the involuntary manslaughter instruction preserved the issue for appeal. *See State v. McNeil*, 350 N.C. 657, 691, 518 S.E.2d 486, 507 (1999) ("We note that [the] defendant waived this [improper jury instructions] argument by failing to properly object during the charge conference."), *cert. denied*, 529 U.S. 1024, 146 L. Ed. 2d. 321 (2000); *State v. Ross*, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988); N.C. R. App. P. 10(a)(2) (2021) ("A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, stating distinctly that to which objection is made and the grounds of the objection; provided that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury."). Defendant objected during the charge conference and after the trial court instructed the jury, and properly preserved his challenge to the trial court's refusal to give a pattern involuntary manslaughter instruction to the jury.

### B. Refusal to Give Pattern Involuntary Manslaughter Instruction

¶ 20          "When determining whether the evidence is sufficient to entitle a defendant to jury instructions, courts must consider the evidence in the light most favorable to the defendant." *State v. Clegg*, 142 N.C. App. 35, 46, 542 S.E.2d 269, 277 (marks omitted), *disc. rev. denied*, 353 N.C. 453, 548 S.E.2d 529 (2001).

¶ 21        "[A] judge presiding over a jury trial *must instruct* the jury as to a lesser

included offense of the crime charged where there is evidence from which the jury

could reasonably conclude that the defendant committed the lesser included offense."

*State v. McConnaughey*, 66 N.C. App. 92, 95, 311 S.E.2d 26, 28 (1984) (emphasis

added); *see also State v. Collins*, 334 N.C. 54, 58, 431 S.E.2d 188, 190-91 (1993) ("If

the evidence before the trial court in the defendant's non-capital trial . . . tended to

show that the defendant might be guilty of lesser-included offenses, the trial court

was required . . . to instruct the jury as to those lesser-included crimes.").

> A trial judge is required to instruct the jury on the law
> arising from evidence presented at trial. The necessity of
> instructing the jury as to lesser included offenses arises
> only where there is evidence from which the jury could find
> that a lesser included offense had been committed.
> Further, the trial judge is not required to submit lesser
> included offenses for a jury's consideration when the
> State's evidence is *positive as to each and every element* of
> the crime charged and there is *no conflicting evidence*
> related to any element of the crime charged.

*State v. Washington*, 142 N.C. App. 657, 659-60, 544 S.E.2d 249, 251 (2001)

(emphases added) (citation omitted), *disc. rev. denied*, 353 N.C. 532, 550 S.E.2d 165

(2001); *see also State v. Drumgold*, 297 N.C. 267, 271, 254 S.E.2d 531, 533 (1979)

(citation and marks omitted) ("It is well settled that a defendant is entitled to have

all lesser degrees of offenses supported by the evidence submitted to the jury as

possible alternate verdicts. On the other hand, the trial court need not submit lesser

degrees of a crime to the jury when the State's evidence is positive as to each and every element of the crime charged *and there is no conflicting evidence relating to any element of the charged crime.*").

¶ 22        We review whether the State's evidence was sufficient to fully satisfy its burden of proving each element of the crime–second-degree murder.  *See State v. Johnson*, 317 N.C. 193, 205, 344 S.E.2d 775, 783 (1986).  Where other evidence negates those elements, when viewed in the light most favorable to Defendant, Defendant is entitled to an instruction regarding the lesser included offense of involuntary manslaughter.  *Id.* ("Since the State's evidence was sufficient to fully satisfy its burden of proving each element of first-degree murder and there was no other evidence to negate these elements other than the defendant's denial that he committed the offense, the defendant was not entitled to an instruction on the lesser-included offense of involuntary manslaughter.").  Defendant's argument that the trial court should have given an involuntary manslaughter jury instruction posits that the evidence negated the element of malice and supported a jury verdict of involuntary manslaughter due to his criminally negligent actions.

¶ 23        Additionally,

> [o]n appeal, a defendant is required not only to show that a challenged jury instruction was erroneous, but also that such error prejudiced the defendant.  "A defendant is prejudiced . . . when there is a reasonable possibility that, had the error in question not been committed, a different

result would have been reached at the trial out of which the appeal arises."

*Richardson*, 270 N.C. App. at 152, 838 S.E.2d at 473 (citation omitted) (quoting N.C.G.S. § 15A-1443(a) (2019)).

**1. Second-Degree Murder and Malice Presumption**

Before our analysis of the lesser included offense of involuntary manslaughter, we note the elements of the more serious crime of second-degree murder, and analyze its element of malice. "Second-degree murder . . . is defined as an unlawful killing of a human being *with malice* but without premeditation and deliberation." *State v. Thomas*, 325 N.C. 583, 567, 386 S.E.2d 555, 603-04 (1989). The pattern jury instructions require the State to prove three things beyond a reasonable doubt in order to obtain a second-degree murder conviction: "the defendant wounded the victim with a deadly weapon"; "the defendant acted intentionally and with malice"; and "the defendant's act was a proximate cause of the victim's death." N.C.P.I.–Crim. 206.30A (2019).

Malice is defined as follows:

> [M]alice, as it is ordinarily understood, means not only hatred, ill will, or spite, but also that condition of mind which prompts a person to take the life of another intentionally, without just cause, excuse, or justification, or to wantonly act in such a manner as to manifest depravity of mind, a heart devoid of a sense of social duty, and a callous disregard for human life.

*State v. Crawford*, 329 N.C. 466, 481, 406 S.E.2d 579, 587 (1991).

¶ 26        "It is well settled that an instruction to the jury that the law implies malice and unlawfulness from the intentional use of a deadly weapon proximately resulting in death is not a conclusive irrebuttable presumption." *State v. Holder*, 331 N.C. 462, 487, 418 S.E.2d 197, 211 (1992) (citing *State v. Reynolds*, 307 N.C. 184, 297 S.E.2d 532 (1982)); *see also State v. Forrest*, 321 N.C. 186, 191-92, 362 S.E.2d 252, 255 (1987) ("The trial court properly instructed the jury that it should consider this permissive inference [of malice] along with all the other facts and circumstances . . . ."). Defendant and the State disagree regarding whether the evidence established the second-degree murder element of malice, which would preclude a lesser included offense instruction in this case. After analyzing caselaw below, we do not agree with the State's contention that each element of second-degree murder, specifically malice, was conclusively established when the evidence is viewed in the light most favorable to Defendant.

**2. Involuntary Manslaughter–Criminal Negligence**

¶ 27        "Involuntary manslaughter, which is a lesser included offense of second degree murder, is the unlawful killing of a human being *without malice*, without premeditation and deliberation, and without intention to kill or inflict serious bodily injury." *Debiase*, 211 N.C. App. at 505, 711 S.E.2d at 441 (emphasis added) (citation and marks omitted).

¶ 28    "Involuntary manslaughter may also be defined as the unintentional killing of a human being *without malice*, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." *State v. Powell*, 336 N.C. 762, 767, 446 S.E.2d 26, 29 (1994) (emphasis added).

> [W]hile involuntary manslaughter imports an unintentional killing, i.e., the absence of a specific intent to kill, it is . . . accomplished by means of some intentional act. [W]ithout some intentional act in the chain of causation leading to death there can be no criminal responsibility. Death under such circumstances would be the result of accident or misadventure.

*State v. Wilkerson*, 295 N.C. 559, 582, 247 S.E.2d 905, 918 (1978).

¶ 29    Defendant was entitled to an involuntary manslaughter jury instruction, specifically in light of our opinion in *Debiase*. In *Debiase*, the defendant and the victim argued, and the defendant attacked the victim with a beer bottle and hit the victim multiple times in the head. *Debiase*, 211 N.C. App. at 500, 711 S.E.2d at 438. During the course of the attack, the beer bottle broke, the defendant "jabbed [the victim] multiple times with the bottle[,]" and the victim died. *Id.* at 498, 500, 711 S.E.2d at 437, 438 (marks omitted). The defendant was convicted of second-degree murder, but argued the trial court erred in failing to instruct the jury on the lesser included offense of involuntary manslaughter because the evidence supported the charge. *Id.* at 503, 711 S.E.2d at 440. We agreed, stating the evidence, when viewed

in the light most favorable to the defendant, indicated "[the] [d]efendant did not know and had no reason to believe that the bottle would break or that the breaking of the bottle would inflict a fatal wound to [the victim's] neck." *Id.* at 506, 711 S.E.2d at 442.

¶ 30        Moreover, in *Debiase*, we rejected the State's argument that the defendant's use of a deadly weapon required a "conclusive, irrebuttable presumption" that the defendant acted with malice, which would have rendered the trial court's refusal to instruct the jury regarding involuntary manslaughter valid. *Id.* at 509, 711 S.E.2d at 444. The State makes a similar argument here regarding a required and established presumption of malice. This argument is similarly unpersuasive and is now in direct contradiction to our caselaw. The trial court's instruction regarding malice, which told the jury it was permitted, but not required, to infer malice from Defendant's use of his hands in the assault, comported with our holding in *Debiase*, which treated malice as a "permissible inference," and not a "mandatory presumption," when "the defendant adduces evidence or relies on a portion of the State's evidence raising an issue on the existence of malice[.]" *Debiase*, 211 N.C. App. at 509-10, 711 S.E.2d at 444-45 (marks omitted).

¶ 31        Viewing the evidence in the light most favorable to Defendant, the evidence was not "positive" as to the element of malice for second-degree murder. The jury could reasonably have found Defendant did not act with malice, but rather committed

a reckless act without the intent to kill or seriously injure[2]–he spent the day declaring his love for Mrs. Brichikov, they used drugs together, something occurred to trigger a confrontation after they spent hours together the day of the killing, and her body was in a weakened state from a recent overdose, heart blockage, and fentanyl overdose. Further, according to Defendant's expert, the assault did not cause the

---

[2] We have held:
> Had the jury been permitted to consider the issue of Defendant's guilt of involuntary manslaughter, there is a reasonable possibility that it might have concluded that he acted 'without intention to kill or inflict serious bodily injury, and without either express or implied malice,' making him guilty of involuntary manslaughter rather than second degree murder.

*Debiase*, 211 N.C. App. at 510, 711 S.E.2d at 445 (quoting *State v. Foust*, 258 N.C. 453, 459, 128 S.E.2d 889, 893 (1963)). "'In this setting, and with credibility a matter for the jury, the court should have submitted involuntary manslaughter with appropriate instructions' to the jury." *Id.* (quoting *State v. Wrenn*, 279 N.C. 676, 683, 185 S.E.2d 129, 133 (1971)).

Further, we note Defendant acted intentionally in assaulting Mrs. Brichikov, which does not negate the possibility of him acting with criminal negligence to support an involuntary manslaughter conviction. "[W]hile involuntary manslaughter imports an unintentional killing, i.e., the absence of a specific intent to kill, it is . . . accomplished by means of some intentional act. Indeed without some intentional act in the chain of causation leading to death there can be no criminal responsibility." *Wilkerson*, 295 N.C. at 582, 247 S.E.2d at 918; *see also State v. Drew*, 162 N.C. App. 682, 686-87, 592 S.E.2d 27, 30 (holding that, where the defendant stabbed an individual he did not expect to be in his home, "the jury could have . . . concluded that [the] defendant . . . intended to strike at [the intruder] to keep him away, but did not intend to kill or seriously injure him," which merited an involuntary manslaughter instruction), *disc. rev. denied*, *appeal dismissed*, 358 N.C. 735, 601 S.E.2d 867 (2004); *Debiase*, 211 N.C. App. at 508-10, 711 S.E.2d at 443-45 (noting that, despite the defendant's admission that he intentionally hit the deceased on the head with a beer bottle, the "evidence tending to show the occurrence of a killing caused by the negligent or reckless use of a deadly weapon without any intent to inflict death or serious injury [was] sufficient to support an involuntary manslaughter conviction" and merited an involuntary manslaughter instruction). Here, the evidence tending to show Mrs. Brichikov's death was caused by Defendant's negligent or reckless use of his hands without intent to kill or seriously injure Mrs. Brichikov was sufficient to support an involuntary manslaughter conviction.

death on its own. Defendant also arguably used a less deadly weapon than the bottle used in *Debiase*, his hands, and "the evidence contained in the present [R]ecord is susceptible to the interpretation that, at the time that [Defendant] struck [Mrs. Brichikov]," he did so recklessly and with culpable negligence, permitting an involuntary manslaughter conviction. *Debiase*, 211 N.C. App. at 506, 711 S.E.2d at 442.

¶ 32      The State relies on *State v. Smith*, *inter alia*, to advance an argument that malice is presumed due to the use of a deadly weapon. *See State v. Smith*, 351 N.C. 251, 266-67, 524 S.E.2d 28, 40, *cert. denied*, 531 U.S. 862, 148 L. Ed. 2d 100 (2000); *see also State v. Bush*, 289 N.C 159, 170, 221 S.E.2d 333, 340, *judgment vacated in part and remanded on other grounds*, *Bush v. North Carolina*, 429 U.S. 809, 50 L. Ed. 2d 69 (1976). Specifically, the State argues it "has *established* malice in the instant case." (Emphasis added). Our Supreme Court's holding in *Smith*, where malice was not required to be shown in a first-degree murder conviction where the defendant used *poison* as a weapon, is clearly distinguishable from this case, where Defendant's *hands* were his deadly weapon, which do not support an irrebuttable presumption of malice. *See Smith*, 351 N.C. at 267, 524 S.E.2d at 40 (marks omitted) ("This Court has already stated that murder by torture, which is in the same class as murder by poison, is a dangerous activity of such reckless disregard for human life that, like felony murder, malice is implied by the law. The commission of torture implies the

requisite malice, and a separate showing of malice is not necessary."). We find *Smith* inapplicable to this case. Further, such an established, conclusive presumption of malice would be at odds with the trial court's permissible inference instruction in this case. Finally, such a mandatory presumption of malice would be contrary to our Supreme Court's precedent. *See Holder*, 331 N.C. at 487, 418 S.E.2d at 211 (holding a jury instruction regarding the implication of "malice and unlawfulness from the intentional use of a deadly weapon proximately resulting in death is not a conclusive irrebuttable presumption").

¶ 33        In light of *Debiase*, a defendant wielding a deadly weapon that is not a tool deemed *per se* malicious, such as poison, merits an involuntary manslaughter instruction when the evidence, viewed in the light most favorable to the defendant, supports that the defendant acted intentionally and recklessly or carelessly, rather than intentionally and maliciously, and also acted without a specific intent to kill. *See State v. Brewer*, 325 N.C. 550, 575-76, 386 S.E.2d 569, 583 (1989), *cert. denied*, 495 U.S. 951, 109 L. Ed. 2d 541 (1990); *State v. Fleming*, 296 N.C. 559, 564, 251 S.E.2d 430, 433 (1979); *Wilkerson*, 295 N.C. at 582, 247 S.E.2d at 918. The evidence, viewed in the light most favorable to Defendant, merited an involuntary manslaughter instruction, as the evidence supported a finding Defendant acted with criminal negligence. The trial court erred in denying Defendant's request for an involuntary manslaughter instruction.

### 3. Prejudice

¶ 34

> The trial court must give a requested instruction, at least in substance, if a defendant requests it and the instruction is correct in law and supported by the evidence. In determining whether the evidence supports an instruction requested by a defendant, the evidence must be interpreted in the light most favorable to [the defendant]. The trial judge making the decision must focus on the sufficiency of the evidence, not the credibility of the evidence. Failure to give the requested instruction where required is a reversible error.

*State v. Reynolds*, 160 N.C. App. 579, 581, 586 S.E.2d 798, 800 (2003) (citations omitted), *disc. rev. denied*, 358 N.C. 548, 599 S.E.2d 916 (2004); *see also State v. Tidwell*, 112 N.C. App. 770, 775-77, 436 S.E.2d 922, 926-27 (1993) (ordering a new trial where the trial court refused the defendant's request for an involuntary manslaughter jury instruction and the defendant's testimony supported a finding of culpably negligent action).

> Error in failing to submit the question of a defendant's guilt of lesser degrees of the same crime is not cured by a verdict of guilty of the offense charged because, in such case, it cannot be known whether the jury would have convicted of a lesser degree if the different permissible degrees arising on the evidence had been correctly presented in the charge.

*State v. Thacker*, 281 N.C. 447, 456, 189 S.E.2d 145, 151 (1972), *disapproved on other grounds in North Carolina v. Butler*, 441 U.S. 369, 372, 60 L. Ed. 2d 286, 291 (1979).

¶ 35 Upon our review of the Record, "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached[,]"

as the jury could have found Defendant did not act with malice, but rather with culpable negligence, but we cannot know with certainty. *See Richardson*, 270 N.C. App. at 152, 838 S.E.2d at 473 (marks omitted) ("A defendant is prejudiced when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."). Defendant suffered prejudice due to the trial court's failure to instruct the jury regarding involuntary manslaughter and is entitled to a new trial.

**4. Involuntary Manslaughter-Culpable Omission**

¶ 36        Our holding that the evidence, when viewed in the light most favorable to Defendant, supported a finding Defendant acted with criminal negligence and entitled him to a jury instruction regarding involuntary manslaughter renders Defendant's second argument–the evidence supported a finding Defendant's actions were a culpable omission meriting an involuntary manslaughter instruction–moot. *See State v. Angram*, 270 N.C. App. 82, 88, 839 S.E.2d 865, 869 (2020) ("Because we must reverse the judgment, we need not address [the] defendant's other issue on appeal."). We decline to address the substance of Defendant's second and unpreserved argument. The mootness of Defendant's second argument is no indictment on the validity or invalidity of the argument.

## CONCLUSION

¶ 37        Defendant was entitled to a jury instruction on involuntary manslaughter, as

the evidence could have supported a guilty verdict for involuntary manslaughter under a theory of culpable negligence. Further, Defendant suffered prejudicial error, as there was a reasonable possibility that a different result would have been reached had the involuntary manslaughter instruction been given to the jury.

NEW TRIAL.

Judge GORE concurs.

Judge CARPENTER dissents by separate opinion.

CARPENTER, Judge, dissenting.

¶ 38    In this matter, I concur with the majority that an instruction on involuntary manslaughter based upon a theory of culpable omission would require a special instruction be given to the jury, and Defendant failed to properly preserve this issue for appeal by failing to present his proposed special instruction in writing to permit review by this Court.

¶ 39    I write to respectfully dissent regarding the issue of whether the trial court's refusal to grant Defendant's request for a lesser included instruction on involuntary manslaughter contained in the pattern jury instructions was error. Based upon the jury finding beyond a reasonable doubt that this offense was especially heinous, atrocious, or cruel as an aggravating factor, it appears clear the verdict would not have been different had the trial judge given the lesser included involuntary manslaughter instruction.

¶ 40    "Involuntary manslaughter, which is a lesser included offense of second degree murder, is the unlawful killing of a human being without malice, without premeditation and deliberation, *and without intention to* kill or *inflict serious bodily injury*." *State v. Debiase*, 211 N.C. App. 497, 505, 711 S.E.2d 436, 441, *disc. rev. denied*, 365 N.C. 335, 717 S.E.2d 399 (2011) (emphasis added) (citation and marks omitted). "Involuntary manslaughter may also be defined as the unintentional killing of a human being without malice, proximately caused by (1) an *unlawful act not amounting to a felony* nor naturally dangerous to human life, or (2) a culpably

negligent act or omission." *State v. Powell*, 336 N.C. 762, 767, 446 S.E.2d 26, 29 (1994) (emphasis added).

¶ 41        My colleagues rely heavily on the application of *Debiase*, 211 N.C. App. 497, 711 S.E.2d 436. However, *Debiase* is distinguishable from this case. In *Debiase*, factual accounts varied as to the occurrences resulting in the victim's fatal wound, and the jury had to determine whether the defendant acted intentionally in inflicting the wound. *See Debiase*, 211 N.C. App. at 499, 711 S.E.2d at 438 (testimony presented to the effect the defendant did not make a stabbing motion at the victim using a broken beer bottle).

¶ 42        In the case at bar, there was no dispute Defendant intentionally and feloniously assaulted the victim, causing facial fractures. At all times, expert testimony was consistent in the conclusion the death was a homicide. Further, there was substantial evidence of malice in this case. The jury was asked to consider aggravating factors and found beyond a reasonable doubt the presence of the aggravating factor: the offense was "especially heinous, atrocious, or cruel." **{R. p. 38}.** We have special insight into the jury's treatment and consideration of the malice element of second degree murder, based upon its findings of aggravating factors: insight that we would not ordinarily have. In finding this offense was especially heinous, atrocious, or cruel beyond a reasonable doubt, it is clear the jury gave substantially the same consideration to the evidence that it would have given in the

determination of the presence of malice. Therefore, the verdict would not have been different had the lesser included instruction on involuntary manslaughter been given. The majority correctly writes that in *Debiase*, we decided, when viewing the evidence in the light most favorable to the defendant, "[the] [d]efendant did not know and had no reason to believe that the bottle would break or that the breaking of the bottle would inflict a fatal wound to [the victim's] neck." *Id.* at 506, 711 S.E.2d at 442. I cannot similarly agree that in the case at bar, where Defendant beat his wife so badly that she suffered multiple facial fractures, the Defendant did not know or did not have reason to believe he would cause serious bodily injury or inflict a fatal wound.

Given that the jury found this crime to be especially heinous, atrocious, or cruel, the evidence is undisputed that Defendant committed an unlawful act amounting to a felony intended to inflict serious bodily injury. Even in the light most favorable to Defendant, no evidence existed to contravene the fact that Defendant assaulted his wife, nor did evidence exist to contravene the fact that Defendant acted with the intention to inflict serious bodily injury, or the knowledge or reason to know his actions could do so. Therefore, Defendant was not entitled to an involuntary manslaughter instruction.

I would find no error in the trial court's decision to decline to deliver an instruction to the jury on involuntary manslaughter because the jury's verdict would

*CARPENTER, J., dissenting.*

not have been different had the instruction been given. Therefore, I respectfully dissent.