IN THE SUPREME COURT OF NORTH CAROLINA

No. 216A25

Filed 22 May 2026

STATE OF NORTH CAROLINA

v.

DONNIE RAY NUNNALLY

Appeal pursuant to N.C.G.S. § 7A-30(2) from the unpublished decision of a divided panel of the Court of Appeals, No. COA24-550 (N.C. Ct. App. Aug. 6, 2025), reviewing judgments entered on 20 January 2023 by Judge William D. Wolfe in Superior Court, Durham County, and remanding the case. Heard in the Supreme Court on 18 February 2026.

*Jeff Jackson, Attorney General, by Ashley Weathers, Special Deputy Attorney General, for the State-appellant.*

*Joseph P. Lattimore for defendant-appellee.*

BERGER, Justice.

A Durham County jury found defendant guilty of possession of a firearm by a felon and two counts of assault with a deadly weapon. Defendant was sentenced in the aggravated range to twenty-four to thirty-eight months in prison for possession of a firearm by a felon, to run consecutively with a 150-day sentence for the misdemeanor assaults.

In separate colloquies with the trial court, defendant stipulated that he had a

prior felony conviction and that he possessed a firearm when the incident occurred. Despite these stipulations, defendant argues on appeal that his defense counsel's jury argument contained an implied admission related to these stipulations which was per se prejudicial pursuant to *State v. Harbison*, 315 N.C. 175 (1985), *cert. denied*, 476 U.S. 1123 (1986), and *State v. McAllister*, 375 N.C. 455 (2020). Under those cases, "when counsel to the surprise of his client admits his client's guilt, the harm is so likely and so apparent that the issue of prejudice need not be addressed." *Harbison*, 315 N.C. at 180; *see also McAllister*, 375 N.C. at 475, 477 (holding that "under *Harbison* and its progeny defense counsel was required to obtain the informed consent of defendant" prior to conceding guilt and remanding to the trial court "for the sole purpose of determining whether defendant knowingly consented in advance to his attorney's admission of guilt to the . . . charge").

A divided panel of the Court of Appeals determined that "the record fails to show whether defendant knowingly consented in advance to his trial counsel's admission of guilt" and remanded the case to the trial court for an evidentiary hearing on that issue alone. *State v. Nunnally*, No. COA24-550, 2025 WL 2234017, at *5 (N.C. Ct. App. Aug. 6, 2025). Because defendant stipulated on the record to defense counsel's purported concessions and counsel did not explicitly or implicitly concede defendant's guilt, we reverse.

## I.    Factual and Procedural Background

Defendant was indicted on two counts of assault with a deadly weapon with intent to kill and one count of possession of a firearm by a felon following an August 2021 incident with his former girlfriend, Geneicia Connor.  Ms. Connor was following her uncle, Paul Connor, in her vehicle while helping him move to a new home.  A black van pulled in front of Ms. Connor's car at a traffic signal, and defendant jumped out of the van holding a gun.  Ms. Connor exited her vehicle, and defendant hit her with the gun, causing her to fall backwards into the grass.  Seeing Ms. Connor fall, Mr. Connor exited his own car and saw defendant fire "two or three shots" in Ms. Connor's direction.  Then defendant turned towards Mr. Connor and "shot at least three, four rounds."  No one was struck by any of the rounds.

Defendant's matter came on for trial in January 2023.  During pretrial proceedings, defendant, his attorney, and the State executed and filed a written stipulation with the trial court in which defendant admitted that he had a prior felony conviction.  Thereafter, a colloquy between defendant and the trial court occurred on the record concerning the stipulation.

> THE COURT: All right.  The Court has been handed a stipulation of the parties that reads, "In September 27, 2004, in Guilford County Superior Court, the Defendant pled guilty to a felony that was committed on December 19th, 2003, in violation of the laws of the State of North Carolina."
>
> . . . .
>
> Well, [defense counsel], I assume you're stipulating for the

purpose of avoiding the jury hearing what the felony is, is that right?

[DEFENSE COUNSEL]: That is correct, Your Honor. . . .

. . . .

THE COURT: Mr. Nunnally, can you stand up for just a minute? I've just got to ask you a question.

Mr. Nunnally, did you understand what your lawyer just said? That basically by virtue of this stipulation, basically it's just something you—on which your lawyer and the State's lawyer agree. They're basically agreeing that you were convicted of a felony on September 24—September 27th, excuse me, 2004 in Guilford County.

That basically does admit an element of the offense. Your lawyer can't do that without your permission. Does he have your permission to do that?

DEFENDANT: Is it in my best interest?

[DEFENSE COUNSEL]: Yeah. Otherwise they're going to read what the felony was.

DEFENDANT: Yes, I agree.

THE COURT: Okay. So he does have your permission to do that?

DEFENDANT: Yes.

During trial, defense counsel informed the trial court that the court "needed to possibly make a [separate] *Harbison* inquiry because there may be a point in the trial when the defense may admit [defendant] actually possessed the firearm." The trial court engaged in a second colloquy with defendant.

THE COURT: Mr. Nunnally, can you stand for me? Just got to ask you a quick question. It's kind of [the] same

question I asked you before about the other stipulation.

Your lawyer has told me that there may be a point in this trial, either during one of his arguments or maybe if you testify—don't know whether that's going to happen yet or not—where he may concede on your behalf that you actually possessed a firearm during this incident. Because that's an element of one of the crimes, I have to ask you whether or not he has your permission to do that, because he's not allowed to concede any element of the crimes without your permission.

There may be tactical reasons why that's a good idea or not. I don't know, that's between you and your lawyer. But I just need to know whether or not he has your permission, if he does that.

DEFENDANT: He has my permission. Can I ask you a question?

. . . .

THE COURT: . . . Right now I'm just trying to find out whether or not—because the point in time that that admission may come out might happen before we get to the point of testifying. I don't know. And I just need to make sure he's got your permission to do that because that's required. And so if he does, fine, just tell me so; if not, then I need to know that too.

. . . .

THE COURT: Just trying to find out if your lawyer has permission from you to admit during this incident you may have possessed a firearm. That's all.

. . . .

THE COURT: So does he have your permission?

DEFENDANT: Yes, sir.

At the close of the State's evidence, defendant declined to testify or put on any

evidence. During closing argument, defense counsel almost exclusively argued that the intent element necessary to convict on assault with a deadly weapon with intent to kill was not satisfied. Defense counsel recounted and discussed the eyewitness testimony offered by the State, arguing that specific intent had not been proven. Counsel did not explicitly argue the elements of possession of a firearm by a felon or otherwise ask the jury to find defendant not guilty of that charge.

> The circumstances that you can draw the deduction from is what Mr. Connor said. He was standing mere feet, standing over Geneicia Connor when he pulled the trigger. If he had intended to kill her, Paul Connor's words, a reasonable and prudent person, he'd have done it. . . .
>
> From every other witness that absolutely would have looked like he was shooting at her. But Paul Connor says he wasn't. Then turned as Mr. Connor is coming. Same thing. Mr. Connor said he was close enough. I mean, closer than we are. And missed with multiple shots. That's a circumstance where you can say just a horrible shot. Or you can say never intended to kill.
>
> The State says, why would you ever shoot a gun at somebody without an intent to kill? Warning shots scare people off. There's lots of reasons, whether they are rational reasons or reasons you would do, that's a different issue. But certainly just the fact that you point a gun in the direction of somebody and pull the trigger does not prove beyond a reasonable doubt that you had an intent to kill that person, especially when all the other circumstances are you didn't even strike them. And you were close enough that if that was your intent, you would not have missed.
>
> You know, the State wants to quote the stuff from the Court of Appeals, natural consequences. Pointing a gun at somebody and shooting, if you intend to kill them a natural consequence is you hit them. Pointing a gun at somebody

and shooting and not hitting them is a natural consequence of not having an intent to kill that person. Just because someone points a gun in the direction of somebody does not mean there was an intent to kill.

The jury found defendant guilty of two counts of misdemeanor assault with a deadly weapon and one count of possession of a firearm by a felon. The jury also found as an aggravating factor that defendant committed these offenses while on pretrial release for other charges.[1] The trial court sentenced defendant in the aggravated range to twenty-four to thirty-eight months in prison for the possession of a firearm by a felon conviction, to run consecutively with a 150-day sentence for the misdemeanor assaults.

Defendant appealed, arguing "he received per se ineffective assistance of counsel because the record does not establish whether he knowingly consented to his counsel's implicit admission of guilt to the possession of a firearm by a convicted felon charge." *Nunnally*, 2025 WL 2234017, at *1. A divided panel at the Court of Appeals held that "the record fails to show whether defendant knowingly consented in advance to his trial counsel's admission of guilt." *Id.* at *5. The majority remanded for an evidentiary hearing "to determine whether defendant understood the consequence of the concession of the second element." *Id.*

The dissent argued that "[t]he record establishes that [defendant] expressly

---

[1] When this incident took place, defendant was on pretrial release for drug trafficking, possession with intent to sell or deliver cocaine, resisting a public officer, possession of a controlled substance in a prison or jail facility, and other drug related charges.

authorized both the admission of possession of a firearm and the prior felony conviction after proper inquiry by the trial court." *Id.* at *6 (Murry, J., dissenting). Further, the concessions were part of counsel's "strategy" and defendant "was not prejudiced by [the] admission." *Id.*

The State filed a notice of appeal based upon the dissent below.[2] We reverse for the reasons stated herein.

## II. Discussion

"A defendant's right to counsel includes the right to the effective assistance of counsel." *State v. Braswell*, 312 N.C. 553, 561 (1985); *see* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defence."); N.C. Const. art. I, § 23 ("In all criminal prosecutions, every person charged with crime has the right . . . to have counsel for defense . . . .").

Generally, "[w]hen a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *Braswell*, 312 N.C. at 561–62 (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). To succeed on such a claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that the deficient

---

[2] The General Assembly repealed the portion of N.C.G.S. § 7A-30 that conferred a right to appeal to the Supreme Court based on a Court of Appeals dissent. *See* Current Operations Appropriations Act of 2023, S.L. 2023-134, § 16.21(d) (d)–(e), 2023 N.C. Sess. Laws 760, 1171. We proceed with mandatory review because this appeal was filed and docketed at the Court of Appeals on 2 June 2023, which was before the effective date of that act. *See Bottoms Towing & Recovery, LLC v. Circle of Seven, LLC*, 386 N.C. 359, 361 n.1 (2024).

performance prejudiced the defense." *Id.* (quoting *Strickland*, 466 U.S. at 687). "Whether a defendant was denied the effective assistance of counsel is a question of law that is reviewed de novo." *State v. Clark*, 380 N.C. 204, 215 (2022).

The two-part *Strickland* test recognizes that "litigants are not entitled to receive 'perfect' trials; instead, they are entitled to receive 'a fair trial, free of prejudicial error.'" *State v. Malachi*, 371 N.C. 719, 733 (2018) (quoting *State v. Ligon*, 332 N.C. 224, 243 (1992)). Thus, "a showing of prejudice is generally required before appellate relief is granted in this jurisdiction." *Id.* at 734. But North Carolina is among the minority of jurisdictions that will presume prejudice under the second prong of *Strickland* when defense counsel admits a defendant's guilt without the defendant's consent. *See Harbison*, 315 N.C. at 180.

In *Harbison*, the defendant was charged with first-degree murder and assault with a deadly weapon. He argued on appeal that his trial counsel admitted his guilt without his consent. 315 N.C. at 177. There, during closing argument, the defendant's counsel stated to the jury, "I don't feel that [the defendant] should be found innocent. I think he should do some time to think about what he has done. I think you should find him guilty of manslaughter and not first degree." *Id.* at 177–78. Ultimately, the defendant was convicted of second-degree murder and assault with a deadly weapon inflicting serious bodily injury. *Id.* at 176.

While the concession made by counsel is an important consideration, the rationale underlying *Harbison* is focused on consent. The Court stated that a

defendant's "right to plead 'not guilty' has been carefully guarded by the courts" and must "remain in the defendant's hands." *Id.* at 180; *see also McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) ("Some decisions . . . are reserved for the client—notably, whether to plead guilty . . . ."). When counsel concedes his client's guilt to the jury without consent, "[t]he practical effect is the same as if counsel had entered a plea of guilty without the client's consent." *Harbison*, 315 N.C. at 180.

We concluded that "when counsel to the surprise of his client admits his client's guilt, the harm is so likely and so apparent that the issue of prejudice need not be addressed." *Id.* Thus, "[i]neffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *Id.* Stated another way, when counsel concedes a defendant's guilt without consent, prejudice is presumed and the defendant is not required to demonstrate any specific harm.

More recently, in *State v. McAllister*, 375 N.C. 455 (2020), this Court extended *Harbison* to implied concessions but reinforced that a defendant's consent is the critical focus of any *Harbison* inquiry. *See id.* at 477. There, the defendant was charged with multiple offenses, including assault on a female. *Id.* at 458–59. In his videotaped interview with law enforcement, the defendant admitted that he assaulted the female victim but denied the more serious offenses with which he was charged, including rape. *Id.* at 459.

The trial court did not conduct a *Harbison* colloquy with the defendant, and there was no evidence in the record that the defendant consented to an admission of guilt by his counsel related to the defendant's statements in the video. *See id.* at 460. During closing argument, defense counsel stated, "You heard [the defendant] admit that things got physical. You heard him admit he did wrong. God knows he did." *Id.* at 473. Counsel thereafter encouraged the jury to find his client not guilty of the more serious offenses but was silent regarding the assault on a female charge. *Id.* at 460–61. The defendant was convicted of assault on a female and acquitted of the other charges. *Id.* at 461.

The Court determined that *Harbison* "encompass[es] situations in which defense counsel impliedly concedes his client's guilt without prior authorization," *id.* at 473, and remanded the case for an evidentiary hearing on consent, *id.* at 477. While no singular definition of implied concession was provided,[3] the Court held that

---

[3] *McAllister* articulated at least three different standards for determining when an implied concession has occurred. At one point, *McAllister* states that *Harbison* error occurs "where defense counsel's statements are the functional equivalent of an outright admission of the defendant's guilt." 375 N.C. at 475. Later, the Court, in circular fashion, posits that an implied admission occurs when "defense counsel's statements to the jury cannot logically be interpreted as anything other than an implied concession of guilt." *Id.* And finally, *McAllister* also suggests that an implied concession occurs when defense counsel declines to expressly argue an offense during closing and "the only logical inference in the eyes of the jury would have been that defense counsel was implicitly conceding [the] defendant's guilt as to that charge." *Id.* at 474.

The last standard is particularly unhelpful, as we discuss in greater detail herein. Such a dubious statement by the *McAllister* Court is perhaps defensible under the facts of that case, but we are doubtful that formulation would serve as an effective standard going forward as there are many reasons counsel may choose not to argue a particular point or issue to a jury.

an implied concession had occurred because counsel (1) "attested to the accuracy of the admissions made by defendant in his videotaped statement," (2) expressed "his own personal opinion that 'God knows [the defendant] did [wrong],' " and (3) explicitly asked the jury to find the defendant not guilty of the more serious offenses but "conspicuously omitt[ed] mention of the assault on a female charge." *Id.* at 474 (second alteration in original).

Ultimately, although failing to provide a consistent and workable definition for implied concession, *McAllister* remained faithful to the touchstone of *Harbison*: a trial counsel's admission of a defendant's guilt, whether explicit or implicit, is per se ineffective assistance of counsel unless the defendant consented to the admission. The *McAllister* Court remanded for an evidentiary hearing "for the sole purpose of determining whether [the] defendant knowingly consented in advance to his attorney's admission of guilt," *McAllister*, 375 N.C. at 477, thereby acknowledging that a defendant's consent conclusively defeats any *Harbison* claim.

Accordingly, the *Harbison–McAllister* framework is appropriate when "a client's autonomy, not counsel's competence, is in issue." *See McCoy*, 584 U.S. at 426. In other words, when counsel usurps the defendant's exclusive "ability to decide whether to maintain his innocence" by conceding guilt without the defendant's

---

But between the first and second standards, the former would appear to be the more appropriate lens through which to view *Harbison*'s per se rule, and we use the "functional equivalent" standard herein.

consent, *id.* at 423, *Harbison* is triggered because the defendant has been deprived of his autonomy to decide whether to plead guilty under the Sixth Amendment. *See Harbison*, 315 N.C. at 180 (*Harbison* error occurs when counsel admits guilt "to the surprise of his client").

But the inverse is also true. With a defendant's consent, counsel is permitted to concede the defendant's guilt to the jury. Similarly, when a defendant stipulates to elements of a crime on the record, counsel may present argument to the jury in accord with those stipulations. *See State v. McNeill*, 346 N.C. 233, 238 (1997) (no *Harbison* error when the "defendant signed the stipulation, understood its effect, and realized that the information contained therein could be presented to the jury"); *see also State v. Matthews*, 358 N.C. 102, 109 (2004) (no *Harbison* error when the "defendant *knew* his counsel were going to make such a concession"). Thus, when the record reveals a defendant knowingly stipulated to certain elements of an offense and his counsel's concessions do not exceed the scope of those stipulations, no *Harbison* error has occurred.

We have stated that "an on-the-record exchange between the trial court and the defendant is the preferred method of determining whether the defendant knowingly and voluntarily consented to an admission of guilt during closing argument." *McAllister*, 375 N.C. at 477 (cleaned up). And while *Harbison* does not "specif[y] a particular procedure that the trial court must invariably follow when confronted with a defendant's concession, . . . we have urged both the bar and the trial

bench to be diligent in making a full record of a defendant's consent." *State v. Berry*, 356 N.C. 490, 514 (2002) (cleaned up). At a minimum, "the facts must show . . . that [the] defendant *knew* his counsel w[as] going to make such a concession." *Matthews*, 358 N.C. at 109.

On appeal, defendant argued that "even though the record reveals his consent to the separate concession of both elements of the charge, it does not show his appreciation and understanding that such concessions equated to an admission of guilt." *Nunnally*, 2025 WL 2234017, at *3. But defendant's argument ignores that the stipulations he agreed to on the record match counsel's purported concessions to the jury, and review of the record herein establishes that the purported concessions were not made to the surprise of defendant.

In addition to the written stipulation signed by defendant which related to his prior felony conviction, the trial court conducted two separate colloquies with defendant. During the first colloquy, defendant confirmed his authorization to admit the written stipulation after counsel explained it precluded the State from disclosing the nature of defendant's underlying felony conviction to the jury. The trial court then inquired if the defendant understood that his stipulation "admit[ted] an element of the offense" and if counsel had his permission to make the admission. After defendant asked on the record if the stipulation was "in [his] best interest," counsel said yes. The trial court asked defendant again, "does [counsel] have your permission to do that?" Defendant replied in the affirmative.

The second colloquy related to conceding defendant possessed a firearm during the incident. On the record, defense counsel informed the trial court that another *Harbison* inquiry was appropriate "because there may be a point in the trial when the defense may admit [defendant] actually possessed the firearm." The transcript shows that during this exchange, the trial court advised defendant that his attorney "may concede on your behalf that you actually possessed a firearm during th[e] incident." The trial court informed defendant that "[b]ecause that's an element of one of the crimes," counsel could not make any concessions or admissions related thereto "without [defendant's] permission." Defendant replied on the record, "He has my permission." The trial court later inquired again if counsel had permission to admit defendant possessed the firearm, and defendant replied, "Yes, sir."

Defendant cannot reasonably contend that he was surprised by defense counsel's purported admissions or the effects thereof because he knowingly consented to the admissions after the trial court engaged in two separate *Harbison* colloquies. During both colloquies, defendant was directed to consult with his attorney about questions he may have related to the concessions. Further, defendant asked counsel whether stipulating to the prior felony conviction was in his best interest, demonstrating that he was informed and engaged in his defense. Defendant thereafter made the decision to consent to counsel's actions.

Unlike in *Harbison* and *McAllister* where there was no evidence of consent, defendant here stipulated on the record to both elements of possession of a firearm

by a felon. "In arguing in accord with defendant's stipulation[s], defense counsel cannot be said to have rendered ineffective legal assistance." *McNeill*, 346 N.C. at 238. Moreover, counsel's duty to consult with their client "does not require counsel to obtain the defendant's consent to 'every tactical decision,' " such as a precise script to be read during closing argument. *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Taylor v. Illinois*, 484 U.S. 400, 417–18 (1988)). Indeed, "[t]rial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *McCoy*, 584 U.S. at 422 (cleaned up) (quoting *Gonzalez v. United States,* 553 U.S. 242, 248 (2008)). When a defendant stipulates to elements of an offense, defense counsel is permitted to pursue arguments in line with those stipulations. As with any such ex post review by an appellate court, parties and judges can imagine various additional questions which could have been asked during the colloquies. However, the limited inquiry before us is whether the record is sufficient to show defendant consented to the stipulations. It cannot be controverted that, based upon the record here, defendant knowingly entered into both stipulations, and *Harbison* is not implicated.

But even if we were unable to conclude from the record whether defendant consented, defendant's *Harbison* claim still fails because counsel did not explicitly or implicitly concede guilt or otherwise exceed the scope of defendant's stipulations. In fact, defendant admits that "counsel did not explicitly convey his surrender in

closing." Accordingly, we review for implicit concessions, i.e., statements made by defense counsel that "are the functional equivalent of an outright admission of . . . defendant's guilt" to the offense of possession of a firearm by a felon. *See McAllister*, 375 N.C. at 475.

At the outset, we note that defendant faces a high bar. *McAllister* cautioned that a "finding of *Harbison* error based on an implied concession of guilt should be a rare occurrence." *Id.* at 476. Indeed, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689; *see also People v. Johnson*, 538 N.E.2d 1118, 1125 (Ill. 1989) ("[A] defendant faces a high burden before he can forsake the two-part *Strickland* test.").

Upon reviewing counsel's purported admissions during closing argument, we conclude that the concessions in *McAllister* are distinguishable from counsel's statements in this case. Here, counsel did not "attest[ ] to the accuracy" of the State's evidence or insert "his own personal opinion" about defendant's actions. *See McAllister*, 375 N.C. at 474. During closing, counsel merely commented on Mr. Connor's testimony—explicitly labeling the remarks as "Paul Connor's words" rather than his own—and argued that if Mr. Connor's description of events is accepted, then defendant did not necessarily have the intent to kill. Specifically, counsel argued "the fact that you point a gun in the direction of somebody and pull the trigger does not prove beyond a reasonable doubt that you had an intent to kill that person" and "[j]ust

because someone points a gun in the direction of somebody does not mean there was an intent to kill." Notably, counsel did not specify that defendant engaged in such action during his argument; rather, he used hypothetical language and rhetoric to argue that it is possible for a person to point a gun in the direction of another without having the intent to kill.

Defendant argues that defense counsel "embraced the testimony of the State's witnesses that [defendant] fired a gun at two people, thereby depriving [defendant] of his right to have the jury determine whether the State met its burden on that issue." But "embracing" testimony is not conceding guilt. And defendant's logic would seemingly require counsel to ignore and refrain from commenting on adverse testimony proffered by the State.

Defendant also relies on *McAllister* to argue that "by not expressly mentioning [the possession of a firearm by a felon charge] at all during the entire closing argument—the only logical inference in the eyes of the jury would have been that defense counsel was implicitly conceding defendant's guilt" to that offense. But even in *McAllister* this factor was not dispositive. There, the defense counsel's concessions sent an "unmistakable message" of the defendant's guilt, "a message that was *magnified* by defense counsel's failure to ask for a not guilty verdict as to that charge as he did for the other three charges." *McAllister*, 375 N.C. at 476 (emphasis added). In other words, a defense counsel's failure to argue a specific charge cannot be the sole basis for finding an implied concession occurred. Instead, a reviewing court must

look at the argument as a whole.

Further, the failure to argue is often evidence of competent and effective advocacy rather than per se ineffective assistance of counsel. "In situations where there is overwhelming evidence of guilt and no defense, if counsel contests all charges he is liable to lose credibility with the trier of fact when it comes to charges where a legitimate defense exists." *Johnson*, 538 N.E.2d at 1125. And not only is this tactic often a sound trial strategy, but ethical considerations might demand attorneys take that approach in certain cases. *See* N.C. R. Prof. Cond. 3.1, cmt. 2. A lawyer must "determine that they can make good faith arguments in support of their clients' positions." *Id.* When this is not possible, such an argument is deemed "frivolous." *Id.*

While these distinctions may appear to be subtle, they are crucial to preserving the role of defense counsel. Competent defense counsel will directly confront the State's strongest evidence while maintaining their client's innocence, and in doing so, reviewing courts must be mindful that counsel must be granted sufficient latitude to address the realities of the State's evidence and arguments. *Harbison* error is therefore appropriately limited to the "rare occurrence," *see McAllister*, 375 N.C. at 476, where counsel admits guilt "to the surprise of his client." *See Harbison*, 315 N.C. at 180.

Not only is this leeway for counsel a practical necessity, but it also reinforces the principles underlying *Harbison*. There, per se ineffective assistance of counsel

was appropriate because the harm from a defense counsel's surprise admission of guilt is "so likely and so apparent that the issue of prejudice need not be addressed." *Id.* But counsel's performance here stands in stark contrast. The uncontroverted testimony proffered by the State tended to show that defendant possessed and fired a gun during the incident. Counsel responded by arguing that *even if* the jury accepts these facts, defendant did not have the intent to kill. While the ultimate result of a trial will not excuse a *Harbison* violation when one occurs, no reasonable argument can be made that counsel here "failed to function in any meaningful sense as the [State]'s adversary." *See United States v. Cronic*, 466 U.S. 648, 666 (1984).

### III.    Conclusion

We decline to extend *Harbison* in a way that perverts its intended protections by hindering the ability of defense counsel to effectively advocate for their clients and advance arguments in accord with their client's stipulations. To assert a *Harbison* violation, the record must (1) establish that the defendant did not consent to an admission by counsel and (2) clearly demonstrate that an admission of guilt occurred. When the record reveals the defendant's express consent to counsel's purported admissions, *Harbison*'s per se rule is not applicable.

The majority below concluded that "the record fails to show whether defendant knowingly consented in advance to his trial counsel's admission of guilt." *Nunnally*, 2025 WL 2234017, at \*5. But that conclusion overlooks that defendant stipulated on the record to counsel's purported concessions and presupposes that an admission of

-20-

guilt took place.  We reverse the judgment of the Court of Appeals.

REVERSED.

Chief Justice NEWBY concurring.

The majority's analysis of defendant's Sixth Amendment ineffective assistance of counsel (IAC) claim is a correct application of *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), and its progeny. Defendant failed to show that his counsel's performance was deficient. We therefore have no reason to proceed past the deficient-performance prong of the *Strickland* Test, meaning we have no occasion to invoke the *Harbison* Rule of presumed prejudice in this case. Therefore, I respectfully concur.

I write separately to highlight that the *Harbison* Rule has been undermined by the United States Supreme Court. In a future case where this Court must reach the prejudice prong of the *Strickland* Test and is asked to apply the *Harbison* Rule, or where the parties ask us to reconsider the *Harbison* Rule, we should realign our Sixth Amendment IAC jurisprudence with controlling authority from the United States Supreme Court.[1]

_____

[1] In this case defendant's IAC claim is predicated entirely on his Sixth Amendment right to counsel. Like the Federal Constitution, the North Carolina Constitution also enshrines the right to counsel. In Article I, Section 23, the state constitution provides, "In all criminal prosecutions, every person charged with crime has the right . . . to have counsel for defense . . . ." N.C. Const. art. I, § 23. Our state constitutional test for IAC claims is synchronized with the federal *Strickland* Test. *See State v. Braswell*, 312 N.C. 553, 562–63, 324 S.E.2d 241, 248 (1985) ("[W]e expressly adopt the test set out in *Strickland* . . . as a uniform standard to be applied to measure ineffective assistance of counsel under the North Carolina Constitution."). We refuse to apply a "less stringent rule" because we believe doing so will "encourage convicted defendants to assert frivolous claims which [will] result in

In *Harbison*, this Court considered an IAC claim brought under the Sixth Amendment by a defendant who "steadfastly maintained that he acted in self[ ]defense" until his trial counsel told the jury in closing argument that, in his opinion, the defendant should not be found innocent but should be found guilty of a lesser charge. *Id.* at 177–78, 337 S.E.2d at 506. The defendant's counsel did so without the defendant's permission. *Id.* at 177, 337 S.E.2d at 506. This Court concluded that the defendant's counsel had acted deficiently. *Id.* at 180–81, 337 S.E.2d at 507–08.

In our analysis, we acknowledged the general standard for IAC claims—the two-pronged *Strickland* Test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 178–79, 337 S.E.2d at 506 (quoting *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984))). But we also cited *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984), where the United States Supreme Court recognized that some instances of deficient performance "are so likely to prejudice the accused that the cost

unwarranted trial of their counsels." *Id.* at 562, 324 S.E.2d at 248 (quoting *State v. Weaver*, 306 N.C. 629, 640, 295 S.E.2d 375, 381 (1982)).

of litigating their effect in a particular case is unjustified." *Harbison*, 315 N.C. at 179, 337 S.E.2d at 507 (quoting *Cronic*, 466 U.S. at 658, 104 S. Ct. at 2046).

We took for granted that a defense counsel performs deficiently when he concedes guilt without the defendant's knowing, voluntary consent, and we also concluded that a concession of guilt without the defendant's knowing, voluntary consent is a type of deficient performance that warrants *Cronic*'s presumption of prejudice. *See id.* at 178–80, 337 S.E.2d at 506–07. We stated, "[W]hen counsel to the surprise of his client admits his client's guilt, the harm is so likely and so apparent that the issue of prejudice need not be addressed." *Id.* at 180, 337 S.E.2d at 507.

The upshot of *Harbison* was the adoption of an automatic rule: "[I]neffective assistance of counsel, per se in violation of the Sixth Amendment, [is] established in *every* criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *Id.* at 180, 337 S.E.2d at 507–08 (emphasis added). So long as a defendant could show that his counsel conceded guilt without knowing, voluntary consent, the defendant's Sixth Amendment right to counsel would be deemed violated automatically. There would be no further inquiries into whether defense counsel's concession was the result of reasonable professional judgment or whether there was a reasonable probability of a different outcome but for the concession. This Court subsequently expanded the *Harbison* Rule "to also encompass situations in which defense counsel impliedly concedes his client's guilt without prior authorization." *State v. McAllister*, 375 N.C. 455, 473, 847 S.E.2d 711, 722 (2020).

The United States Supreme Court, however, has rejected *Harbison*'s approach. Indeed, in *Florida v. Nixon*, 543 U.S. 175, 125 S. Ct. 551 (2004), a case where the Florida Supreme Court employed an analysis virtually identical to this Court's analysis in *Harbison*,[2] the United States Supreme Court reminded all courts how Sixth Amendment IAC claims are to be analyzed when defense counsel concedes guilt without the defendant's knowing, voluntary consent—by routine application of both prongs of the *Strickland* Test. *Id.* at 178–79, 185–92, 125 S. Ct. at 555, 559–63 (citing *Nixon v. Singletary*, 758 So. 2d 618, 622–25 (Fla. 2000)).

According to the United States Supreme Court, *Cronic*'s presumption of prejudice is "narrow" and is to be applied "infrequently." *Id.* at 190, 125 S. Ct. at 562. The United States Supreme Court clarified that the "*Cronic* Exception" to the prejudice prong has a high threshold. For it to apply, defense counsel must "fail [to] meaningfully oppose the [State's] case," "entirely fail[ ] to function as the client's advocate," "entirely fail[ ] to subject the [State]'s case to meaningful adversarial testing," and "fail to function in any meaningful sense as the [State's] adversary." *Id.* at 179, 189–90, 125 S. Ct. at 555, 561–62. This "failure must be complete." *Id.* at 190, 125 S. Ct. at 562 (quoting *Bell v. Cone*, 535 U.S. 685, 696–97, 122 S. Ct. 1843, 1851 (2002)). Thus, "[a] presumption of prejudice is not in order based solely on a defendant's failure to provide express consent to a tenable [concession] strategy

---

[2] In fact, the Florida Supreme Court cited *Harbison* several times. *See Nixon v. Singletary*, 758 So. 2d 618, 623, 625 (Fla. 2000).

counsel has adequately disclosed to and discussed with the defendant." *Id.* at 179, 125 S. Ct. at 555.

The United States Supreme Court held that the Florida Supreme Court had erred by automatically treating every instance of a defense counsel's conceding guilt without the defendant's permission as an instance of deficient performance warranting *Cronic*'s presumption of prejudice. Instead, IAC claims asserting that defense counsel conceded guilt without the defendant's knowing, voluntary consent are supposed to be fully evaluated under both prongs of the *Strickland* Test. The defendant must establish (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. Infrequently, a defense counsel's concession of guilt without the defendant's knowing, voluntary consent may amount to a complete failure to function as the defendant's advocate. On those uncommon occasions, the "narrow" *Cronic* Exception may be invoked and the prejudice prong may be presumptively satisfied.

*Harbison*—like the Florida Supreme Court's decision in *Nixon*—flips this arrangement on its head and allows the *Cronic* Exception to effectively swallow the general rule, which requires review of both prongs of the *Strickland* Test. Under *Harbison*, every instance of a defense counsel's conceding guilt without the defendant's knowing, voluntary consent is treated as an instance of deficient performance where "the harm is so likely and so apparent that the issue of prejudice need not be addressed." 315 N.C. at 180, 337 S.E.2d at 507. By always presuming that

conceding guilt without knowing, voluntary consent is prejudicial IAC instead of generally engaging in a prejudice analysis and "infrequently" applying the *Cronic* Exception, this Court has strayed from the United States Supreme Court's framework for IAC claims. *Nixon* repudiated the Florida Supreme Court's erroneous IAC framework, and, by extension, this Court's.

Although *Harbison* was issued by this Court, the case concerned the Sixth Amendment right to counsel only—i.e., it was based exclusively on federal law. *Id.* at 178, 180, 337 S.E.2d at 506–07. The United States Supreme Court is the ultimate authority on questions of federal law, *see State v. Tirado*, 387 N.C. 104, 128–30, 911 S.E.2d 51, 69–71 (2025), including the test for determining when conduct constitutes IAC in violation of the Sixth Amendment.

Accordingly, we should follow *Nixon* in future cases when considering IAC claims under the Sixth Amendment. But because the *Harbison* Rule is ultimately not triggered in this case, and because the State did not argue for the realignment of our Sixth Amendment IAC jurisprudence with *Nixon*, this is not the case to address our *Harbison* jurisprudence. That case is in the future. I respectfully concur.

Justice RIGGS dissenting.

I disagree with the majority's conclusion that Mr. Nunnally stipulated on the record to defense counsel's purported concessions and that the alleged stipulations presupposed that an admission of guilt took place for the possession of a firearm by a felon offense. While I agree with the majority that "the rationale underlying *Harbison* is focused on consent," majority *supra* Part II, the record does not clearly establish that Mr. Nunnally knowingly consented to the second element of the possession of a firearm by a felon offense. This case is a closer call than what the majority portrays it to be, and I would hold that the Court of Appeals did not err in remanding this matter for an evidentiary hearing on that question. Thus, I respectfully dissent.

The offense of possession of a firearm by a felon has only two essential elements: (1) the defendant has been convicted of a felony,[1] and (2) the defendant subsequently possessed a firearm. *State v. Mercer*, 373 N.C. 459, 462 (2020) (citing *State v. Floyd*, 369 N.C. 329, 333 (2016)). Defense counsel commits per se ineffective assistance of counsel when, "to the surprise of his client[,] . . . counsel admits the

---

[1] I agree with the majority's analysis that Mr. Nunnally stipulated to the first element of the possession of a firearm by a felon offense. The record clearly reflects that the State and defense counsel agreed on behalf of Mr. Nunnally to stipulate that Mr. Nunnally had a prior felony conviction. That stipulation was memorialized and filed with the trial court on the first day of trial. The trial court engaged in a *Harbison* colloquy with Mr. Nunnally, and Mr. Nunnally confirmed that defense counsel had permission to concede that stipulation— the first element of the possession offense—and that he understood the consequence of such a stipulation.

defendant's guilt to the jury without the defendant's consent." *State v. Harbison*, 315 N.C. 175, 180 (1985). The majority states Mr. Nunnally failed to establish either prong of *Harbison*, concluding that Mr. Nunnally's *Harbison* claim fails because Mr. Nunnally knowingly provided consent for counsel to concede stipulations for both elements and that even if consent could not be deduced from the record, counsel did not explicitly or implicitly concede Mr. Nunnally's guilt to the possession offense. *See* majority *supra* Part II. As a preliminary matter, unlike the majority, I would hold that counsel did concede Mr. Nunnally's guilt to the possession of a firearm by a felon offense.

I agree with the majority that defense counsel focused his closing argument predominantly on the counts of assault with a deadly weapon with intent to kill, rather than the possession offense, and did not explicitly argue the possession offense's elements. However, in the process of arguing about the intent element of the assault offenses, defense counsel implicitly conceded Mr. Nunnally's guilt to the possession offense. Defense counsel argued, "Yes, the witnesses said it was pointed at them. Well, clearly it wasn't pointed directly at them or they would have been shot. . . . [Defendant] must have been shooting around [the witness]." In this and other similar statements, defense counsel could not have made the argument that Mr. Nunnally did not intend to shoot the witnesses without implicitly conceding that Mr. Nunnally was holding and firing the weapon. Therefore, defense counsel effectively conceded Mr. Nunnally's guilt to possession of a firearm by a felon. *See*

*State v. McAllister*, 375 N.C. 455, 475 (2020) ("[W]here . . . defense counsel's statements to the jury cannot logically be interpreted as anything other than an implied concession of guilt to a charged offense, *Harbison* error exists unless the defendant has previously consented to such a trial strategy.").

In concluding that defense counsel made no actual concession, the majority insists that Mr. Nunnally's case is distinguishable from *McAllister*. I disagree. In *McAllister*, the defendant was charged with rape, a sexual offense, assault by strangulation, and assault on a female. *Id.* at 458–59. In closing argument, defense counsel never explicitly mentioned the assault on a female charge. *Id.* at 473. Instead, defense counsel focused on the other charges and conceded that the defendant "engaged in assaultive conduct" in arguing for the jury to find defendant not guilty of the other charges, without mentioning the assault on a female charge. *Id.* at 473–76. This Court concluded that "the only logical inference in the eyes of the jury would have been that defense counsel was implicitly conceding defendant's guilt as to [the assault on a female] charge." *Id.* at 474. Like defense counsel in *McAllister*, defense counsel here did not explicitly mention the possession charge in closing, focused on the other charges, and conceded that Mr. Nunnally was in possession of a weapon in arguing that Mr. Nunnally should not be found guilty of the other charges.[2]

---

[2] Defense counsel emphasized that Mr. Nunnally did not have the requisite intent to commit the assault offenses, essentially arguing that Mr. Nunnally should not be found guilty of assault with a deadly weapon with intent to kill. The jury ultimately found Mr. Nunnally guilty of the lesser-included offense of misdemeanor assault with a deadly weapon.

Therefore, the same result as *McAllister* should follow here—defense counsel implicitly conceded Mr. Nunnally's guilt to the possession offense.

Turning to the issue of whether Mr. Nunnally consented to defense counsel conceding his guilt, the court engaged in two *Harbison* colloquies with Mr. Nunnally regarding each element of the possession offense. With respect to the second element, the following discussion took place between the court and Mr. Nunnally:

> THE COURT: . . . Madam Reporter, during the testimony of the last witness, we had a brief bench conference in which defense counsel informed me that I needed to possibly make a Harbison inquiry because there may be a point in the trial when the defense may admit the Defendant actually possessed the firearm.
>
> Is that correct, [defense counsel]?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.
>
> THE COURT: Mr. Nunnally, can you stand up for me? Just got to ask you a quick question. It's kind of same question I asked you before about the other stipulation.
>
> Your lawyer has told me that there may be a point in this trial, either during one of his arguments or maybe if you testify—don't know whether that's going to happen yet or not—where he may concede on your behalf that you actually possessed a firearm during this incident. Because that's an element of one of the crimes, I have to ask you whether or not he has your permission to do that, because he's not allowed to concede any element of the crimes without your permission.
>
> There may be tactical reasons why that's a good idea or not. I don't know, that's between you and your lawyer. But I just need to know whether or not he has your permission, if he does that.

DEFENDANT: He has my permission. Can I ask you a question?

THE COURT: Sure. Be careful not to tell me anything about the confidential conversations between you and your lawyer, but, yes, you may ask me a question.

DEFENDANT: I wanted to be, you know, open and honest, you know, during the whole court—

THE COURT: Yes, sir.

DEFENDANT: —situation. And I'm not going to hold anything back. So, you know, the court could proceed efficiently and not waste anybody's time. And that's why—

[DEFENSE COUNSEL]: We're not at that point yet, so—we'll get to that. He's asking about—the decision on whether to testify or not.

THE COURT: Oh, I see.

[DEFENSE COUNSEL]: And that will happen once the State—

THE COURT: Oh, yes, we'll have a conversation about that later, Mr. Nunnally. You don't have to decide that right now, but I will ask you some questions about that, too, later.

Right now I'm just trying to find out whether or not—because the point in time that that admission may come out might happen before we get to the point of you testifying. I don't know. And I just need to make sure he's got your permission to do that because that's required. And so if he does, fine, just tell me so; if not, then I need to know that too.

DEFENDANT: You know, I didn't want to like waste, you know, court—and I wanted to kind of like explain to you, because I never had a chance—

[DEFENSE COUNSEL]: That's not—this is the trial. We're not—

THE COURT: Just trying to find out if your lawyer has permission from you to admit that during this incident you may have possessed a firearm. That's all.

DEFENDANT: At a later date, you know, during the trial, will I get a chance to talk to you?

THE COURT: You'll have, yes, an opportunity to testify. We will discuss that decision later.

DEFENDANT: Thank you.

THE COURT: So does he have your permission?

DEFENDANT: Yes, sir.

THE COURT: Thank you. That's all I need to know.

From the start, as shown by defense counsel's request for the court to perform a *Harbison* inquiry, defense counsel clearly intended to concede the possession element and did in fact concede the possession element during closing. Beyond forecasting the concession, this exchange also highlights several different problems with the *Harbison* inquiry. Divorced from full context, Mr. Nunnally's statements of "[h]e has my permission" and "[y]es, sir" would seem to indicate Mr. Nunnally consented on the record to his counsel conceding the second element of possession of a firearm. Indeed, the majority casts the colloquy in that light by not including the full discussion that occurred. But in viewing the colloquy in full, Mr. Nunnally is plainly distracted and myopically focused on making sure he can ask the trial court about his choice whether to testify. The court seemed to recognize that because it

reiterated the question notwithstanding Mr. Nunnally's first answer. The exchange

also shows that because of Mr. Nunnally's fixation on asking about testifying, the

trial court and defense counsel had to repeatedly clarify the record and refocus Mr.

Nunnally on the purpose of the colloquy. Further, the trial court also intervened to

emphasize to Mr. Nunnally that he should be careful not to reveal any

communications protected by attorney-client privilege. All the interventions were

obviously appropriate, but they distracted from the matter at hand—establishing

whether Mr. Nunnally understood the trial court's question about the concession and

the consequences of the concession.

Taken together, it is not clear whether Mr. Nunnally understood the potential

consequences of providing consent for conceding to the possession element—that he

was in effect conceding to the whole, completed offense and accepting the significant

sentence that would accompany his guilt.[3] This Court has held that where the

defendant stipulates to all the elements of the offense defense counsel may infer

consent to admit a defendant's guilt to the whole offense. *See State v. McNeill*, 346

_____

[3] The jury ultimately found Mr. Nunnally guilty of two counts of misdemeanor assault with a deadly weapon and one count of possession of a firearm by a felon. For the possession conviction, Mr. Nunnally received a sentence of twenty-four to thirty-eight months. Had Mr. Nunnally pleaded guilty to the possession offense, a trial court would have had to comply with N.C.G.S. § 15A-1022 and would not have been able to accept Mr. Nunnally's guilty plea "without first addressing him personally" and "[i]nforming him of the maximum possible sentence . . . and of the mandatory minimum sentence" for the offense, among other disclosures and determinations. *See* N.C.G.S. § 15A-1022(a) (2025). While *Harbison* and its progeny do not require that (and it might be difficult to do so with the same precision as with a guilty plea), the mandates of that statute by analogy shed light on what kind of understanding a defendant should have of the consequences in order to be able to provide knowing consent to a concession of guilt.

N.C. 233, 238 (1997). In *McNeill*, the defendant testified to the elements—intentionally stabbing the victim—in front of the jury who ultimately found the defendant guilty of first-degree murder. *See id.* at 235–37. The *McNeill* defendant was obviously not surprised by the consequences of defense counsel's concession. That same result should not follow here where the second colloquy is so scattered, where Mr. Nunnally did not coherently string the elements together in a single narrative, and where it is unclear whether Mr. Nunnally fully appreciated the consequences of providing consent.

I agree with the majority's initial framing of the central intent of the *Harbison* inquiry: acknowledging that "[a] defendant's right to plead 'not guilty' has been carefully guarded by the courts" and must "remain in the defendant's hands" given the gravity of the consequences. *See Harbison*, 315 N.C. at 180. And there are instances where a defendant may choose, in collaboration with counsel, to concede guilt to an offense or element as part of an agreed-upon trial strategy. *See, e.g.*, *State v. Thompson*, 359 N.C. 77, 115–20 (2004) (holding no ineffective assistance of counsel where defendant had consented to the trial strategy); *State v. Moore*, 286 N.C. App. 341, 345–50 (2022) (same); *State v. Holder*, 218 N.C. App. 422, 424–28 (2012) (same). But, while it is certainly desirable for defendants to effectively collaborate with defense counsel and pursue trial strategies that are in the defendant's best interest, at the end of the day, the choice to concede guilt remains in the defendant's hands as "[i]t is the defendant—not his attorney—whose liberty is placed at risk as a result of

such a strategic decision." *McAllister*, 375 N.C. at 476; *see also, e.g.*, *State v. Maready*, 205 N.C. App. 1, 13–14 (2010) (holding defense counsel committed *Harbison* error when he did not obtain the defendant's consent in advance even though he acted "in a manner he believed to be the best trial strategy for Defendant"). Here, as admirable as defense counsel's lawyering skills were, the ineffective assistance of counsel analysis in *Harbison* ultimately requires that we place more value on a defendant's agency rather than the risk of "hindering the ability of defense counsel to effectively advocate for their clients." *See* majority *supra* Part III.

Accordingly, I would hold that defense counsel implicitly conceded Mr. Nunnally's guilt to possession of a firearm by a felon. And, based on the second colloquy, the record fails to establish Mr. Nunnally's knowing consent to the second element of the possession offense. Therefore, I respectfully dissent and would hold that the Court of Appeals judgment should be affirmed.

Justice EARLS joins in this dissenting opinion.